# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 5, 2023

Lyle W. Cayce
Clerk

No. 22-30080

ONPATH FEDERAL CREDIT UNION,

*Plaintiff—Appellant*,

*versus*

UNITED STATES DEPARTMENT OF TREASURY, COMMUNITY
DEVELOPMENT FINANCIAL INSTITUTIONS FUND,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-1367

Before DENNIS, ELROD, and HO, *Circuit Judges*.

JAMES C. HO, *Circuit Judge*:

When an application for federal funding contains materially false information, it's reasonable for the federal agency to want the money back. And that is so even if it turns out that the recipient might've been eligible to receive the funds on some other basis not presented in the application. No harm, no foul may be appropriate in sports—but it's not a rule that judges may unilaterally impose on the funding decisions of federal agencies. We accordingly affirm the district court and hold that the agency here did not abuse its discretion by requiring repayment under these circumstances.

**I.**

The Treasury Department administers the Community Development Financial Institutions Fund.  The Fund supports financial institutions that serve low-income clients and communities.  *See* 12 U.S.C. § 4701(b).  To be eligible for funding, a financial institution must apply for and receive certification.  *See* 12 C.F.R. § 1805.200(a)(2).  As part of its certification application, the institution must show that it serves either (1) an Investment Area or (2) a Targeted Population.  *See id.* § 1805.201(b)(3)(i).

An Investment Area is a geographic unit defined by its objective economic distress or its designation by the Internal Revenue Code.  *See id.* § 1805.201(b)(3)(ii).  A Targeted Population is a group of individuals who are low-income or lack access to financial services.  *Id.* § 1805.201(b)(3)(iii).  Under the terms of the certification application, an applicant institution must prove that it directs at least 60% of its activities toward either an Investment Area or a Targeted Population.  If an applicant does not meet this 60% threshold, it will not be certified.

In 2005, OnPath Federal Credit Union submitted a certification application.  Its application stated that OnPath did not serve an Investment Area, but that it did serve a Targeted Population.  Using year-end 2004 data, OnPath indicated that it served a Low-Income Targeted Population in three regions of Louisiana.  In these areas, OnPath explained, it directed more than 60% of its activities toward a Low-Income Targeted Population.

The Fund certified OnPath in January 2006.  As a result, OnPath received over $12 million in awards over the next several years.

The Inspector General of the Treasury Department subsequently started an audit of OnPath.  Based on this detailed, multi-year audit, the Inspector General issued a report concluding that OnPath had "submitted invalid information in its Certification Application and Assistance

Applications" and had received certification "based on invalid information." The report focused on three problems with the application. First, OnPath inaccurately categorized its members' zip codes—which is notable because low-income thresholds can vary by zip code. Second, OnPath improperly classed members as low-income by assuming that any member who lacked income information automatically counted as low-income. Finally, OnPath artificially lowered its members' incomes by consistently choosing to use the lower of two possible income values.

Based on the Inspector General's report, the Fund determined that, "as a result of [OnPath] submitting invalid information in its . . . Certification Application, the . . . awards made to [OnPath] constitute improper payments." OnPath was therefore "not eligible to receive [the] . . . awards." So the agency "require[d] [OnPath] to repay the CDFI Fund for the . . . awards," totaling some $12 million.

OnPath brought this action to challenge the agency's findings and its demand for repayment. The district court denied OnPath's motion to supplement the administrative record. The district court then granted summary judgment to the agency, rejecting OnPath's arbitrariness challenge under the Administrative Procedure Act. OnPath now appeals.

## II.

We review de novo the district court's grant of summary judgment to the agency. *See Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417 (5th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Although we review the district court's grant of summary judgment de novo, we review the underlying agency action under the Administrative Procedure Act's arbitrariness standard. Thus, we "hold unlawful and set

aside agency action, findings, and conclusions" when we find them to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"Arbitrary and capricious review focuses on whether an agency articulated a rational connection between the facts found and the decision made." *Mexican Gulf Fishing Co. v. Dep't of Commerce*, 60 F.4th 956, 971 (5th Cir. 2023) (quoting *ExxonMobil Pipeline v. Dep't of Transportation*, 867 F.3d 564, 571 (5th Cir. 2017)). "In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Texas v. EPA*, 983 F.3d 826, 835 (5th Cir. 2020) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983)).

We conclude that the agency considered the relevant factors and made no clear error in judgment. There was a rational connection between the material falsehoods the agency found in the funding application and the agency's decision to seek repayment from OnPath.

## A.

OnPath argues that it was arbitrary and capricious to demand repayment because the agency "failed to objectively test . . . whether OnPath was in fact eligible for . . . certification."

Recall that there are two different ways to qualify as a Community Development Financial Institution: (1) the Investment Area route and (2) the Targeted Population route. *See* 12 C.F.R. § 1805.201(b)(3)(i). OnPath only applied via the Targeted Population route. It concedes that there were errors in its application to qualify through that route. But OnPath contends it would nonetheless have qualified through the Investment Areas route.

Accordingly, OnPath argues that the agency needed to consider OnPath's eligibility for funding based on Investment Areas before demanding repayment. The agency did not do so. So OnPath contends that the agency "fail[ed] to consider an important aspect of the problem." *M.D. Anderson Cancer Center v. HHS*, 985 F.3d 472, 475 (5th Cir. 2021) (quoting *State Farm*, 463 U.S. at 43).

We reject this contention. For starters, OnPath made errors that were material to its eligibility through the Targeted Population route, and those errors were fatal to its application.

Under the agreement between OnPath and the agency, the Treasury can hold an awardee in default if it discovers materially "inaccurate, false, incomplete or misleading" facts in the application. And once an awardee is in default, the agency can "require . . . repayment" of funds. As we explain, the agency had good reason to conclude that OnPath's data was materially inaccurate. So it was reasonable for the agency to demand repayment.

OnPath's application sought to show that at least 60% of its members came from a Low-Income Targeted Population. As OnPath concedes, its application assumed that any member with unknown income was low income. The agency sensibly rejected OnPath's assumption on the ground that there are plenty of other reasons why income data could be missing. No income information doesn't necessarily mean low income.

Moreover, when an OnPath member had two potential income values, OnPath consistently opted for the lower value. Yet, as the agency noted, OnPath could provide no rationale for always lowering (and never raising) incomes. The agency reasonably concluded that, by consistently picking the lower of two possible income values, OnPath was fudging its Low-Income Targeted Population numbers.

Having made material errors in its application via the Targeted Population route, OnPath cannot rehabilitate its application by invoking the Investment Areas route years later in litigation. OnPath nevertheless contends that, by ignoring the possibility that it was eligible through the Investment Areas route, the Treasury failed to consider "an important aspect of the problem." *State Farm*, 463 U.S. at 43.

But consider the following analogy: A law review accepts law students with either (1) the highest grades or (2) the highest essay competition scores. Students can apply through either path. And applicants must certify that the law review may remove them from the journal if it discovers material inaccuracy in their applications. So suppose a student submits a plagiarized essay and is admitted to the law review through the essay competition path, without ever submitting his transcript. Later, the journal investigates the essay plagiarism and removes the student.

Even if the student would have qualified for membership based on grades alone, removing him for his plagiarized essay would surely be reasonable. The journal only needs to consider whether the student cheated on the essay. It need not consider the student's excellent grades.

Similarly here, the agency only needed to consider whether OnPath submitted inaccurate information when it applied. It did not need to consider whether OnPath could have qualified through an alternative route.

A venerable principle of administrative law provides further support for this conclusion. "An agency must defend its actions based on the reasons it gave when it acted." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020). *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). It is likewise reasonable for agencies to hold applicants to the reasons they articulated when they applied.

That's all the agency did here. It required OnPath to justify itself based on the rationale offered in its application. The agency did not need to let OnPath defend itself "on the basis of . . . [a] 'post hoc rationalization.'" *Regents*, 140 S. Ct. at 1908 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)). We hold that the agency acted reasonably when it declined to consider alternative pathways that OnPath itself did not pursue.

## B.

OnPath alternatively argues that the agency acted arbitrarily by using the credit union's loan data from mid-2005 to judge the accuracy of the application data, which dated to year-end 2004. The agency used slightly later data to determine if OnPath's application included inaccurate information. Thus, OnPath argues, the agency lacked support for its finding that the application information was invalid. We reject OnPath's argument for two reasons.

First, OnPath provides no evidence that the slightly earlier data was meaningfully different. Even if there were moderate changes in OnPath's membership or activities over the course of six months, that would not explain the massive discrepancies the agency found. "An agency's decision is presumptively valid; the plaintiff bears the burden of showing otherwise." *Tex. Tech Physicians Associates v. HHS*, 917 F.3d 837, 844 (5th Cir. 2019). OnPath points to no change in circumstances that would have made mid-2005 so radically different from late-2004.

Moreover, the agency used the slightly later data by necessity, not choice. The agency did not review 2004 data because OnPath could not produce it—as the credit union now concedes. It was OnPath itself that suggested during the audit that the agency could use July 2005 data as a proxy for the 2004 data. It was neither arbitrary nor capricious for the agency to accept OnPath's suggestion.

No. 22-30080

## C.

OnPath presses two other theories of arbitrariness.

First, it argues that the agency failed to correct mistakes OnPath made when it applied. In particular, it points to the agency's failure to correct OnPath's mistaken maps. The agency was guilty of caprice, OnPath argues, when the agency asked follow-up questions about the maps rather than correct OnPath's misapprehensions.

This argument assumes that the onus was on the agency to correct OnPath's mistakes. The record, by contrast, makes clear that it was OnPath's duty to stay abreast of information that could affect its certification. Furthermore, none of the agency's follow-up questions involved the main problems that led to OnPath's decertification: the credit union's assumption that unknown income meant low income and its consistent practice of lowering members' incomes. These mistakes were OnPath's alone.

Second, OnPath asserts that the agency failed to specify a methodology that applicants should use. But OnPath cites no authority that places the burden on the agency to specify in minute detail the methodology an applicant must follow to prove eligibility for funds. Instead, the application form placed the burden on the applicant to "provide information" to the agency. And the agreement made it clear that the inclusion of materially "inaccurate, false, incomplete or misleading" information could lead to a demand for repayment.

\* \* \*

OnPath has failed to show that the agency acted unreasonably. Accordingly, we affirm the grant of summary judgment to the agency on OnPath's arbitrariness claim.

No. 22-30080

### III.

OnPath also appeals the district court's denial of its motion to supplement the administrative record.

When the district court denies a motion to supplement the administrative record, we review only for abuse of discretion. *See*, *e.g.*, *Novartis Pharmaceuticals v. Leavitt*, 435 F.3d 344, 348 (D.C. Cir. 2006) ("We review the district court's refusal to supplement the administrative record for abuse of discretion."); *Latin Am. for Soc. & Econ. Dev. v. FHWA Adm'r*, 756 F.3d 447, 462 (6th Cir. 2014) ("A district court's denial of a motion to supplement the administrative record . . . is reviewed on appeal for abuse of discretion.").

OnPath argues that the district court abused its discretion by failing to supplement the administrative record with (1) the declaration of Albert Richard and the attached loan data and (2) the declaration and report of Terrence Ratigan.

Motions to supplement the record are rarely granted. "Supplementation of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina County Environmental Action v. Surface Transportation Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).

There are three situations where such motions might be granted:

(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . .

(2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or

(3) the agency failed to explain administrative action so as to frustrate judicial review.

*Id.* at 706 (quoting *Kempthorne*, 530 F.3d at 1002).  OnPath argues that the second scenario is presented here—background information is necessary for the court to determine whether the agency considered all relevant factors.

First, OnPath points out that the district court failed to add Albert Richard's declaration and loan data to the administrative record.  OnPath claims that this would have offered the best data to establish its eligibility based on Investment Areas.  But as we've already explained, whether OnPath would have qualified through the Investment Area route is not a relevant factor to this case, because OnPath applied through the Targeted Population route.

OnPath also seeks to supplement the record with expert consultant Terrence Ratigan's declaration and 2021 report. It claims that these will help the court understand that the agency's audit was fundamentally flawed in design and execution.  But as the agency points out, Ratigan's 2018 and 2020 reports are already part of the administrative record.  The only argument that OnPath can muster for a third Ratigan report is that neither OnPath nor Ratigan had access to the administrative record at the time of Ratigan's previous two reports.  This is hardly an "'unusual circumstance[] justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina County*, 602 F.3d at 706 (quoting *Kempthorne*, 530 F.3d at 1002).  The district court did not abuse its discretion by declining to supplement the administrative record.

\* \* \*

We affirm.